## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RONALD HOWARD, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| v. ) | No. 11-1035-JWL |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental

security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social

Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).

Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.     Background

Plaintiff applied for both DIB and SSI on July 21, 2008, alleging disability

beginning December 24, 2002.  (R. 12, 118-27).  The applications were denied initially

and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law

Judge (ALJ).  (R. 12, 46-48, 66-68).  Plaintiff's request was granted, and Plaintiff

appeared with counsel and testified at a hearing before ALJ William H. Rima on August

6, 2009.  (R. 12, 26-45).  At the hearing, Plaintiff amended his alleged disability onset

date to March 21, 2008.  (R. 12, 29).

On October 28, 2009, ALJ Rima issued his decision denying Plaintiff's

applications.  (R. 12-25).  The ALJ found that Plaintiff has numerous impairments,

including both impairments that are severe--degenerative disc disease with scoliosis and

spondylosis, and hypertension; and impairments that are not severe--depression,

posttraumatic stress disorder, and alcohol abuse.  (R. 14-15).  He determined that

Plaintiff's impairments do not meet or medically equal the severity of impairments listed

in the Listing of Impairments.  (R. 15-16).  He summarized and discussed the evidence,

including Plaintiff's allegations, the medical records, and the medical source opinions;[1]

found Plaintiff's allegations "not fully credible;" and accorded "probative but not

substantial weight" to the "other" medical source opinion of nurse-practitioner Morrison

and accorded "significant weight" to the medical opinions of state agency psychological

and medical consultants, Drs. Warrender[2] and Tawadros.  (R. 16-23).  Based upon his

---

[1]"Medical source opinions" as used by the court includes both "medical opinions" and "other" medical source opinions as defined in the regulations and rulings.  20 C.F.R. §§ 404.1513, 404.1527, 416.913, 416.927; Soc. Sec. Ruling (SSR) 96-2p, 96-8p, 06-3p, West's Soc. Sec. Reporting Serv., Rulings 111-15, 143-51, 327-34 (Supp. 2011).

[2]Dr. Warrender is a state agency psychologist who opined that Plaintiff's mental impairments are not severe.  (R. 391, 429).  Plaintiff does not claim error in the ALJ's decision to accord "significant weight" to this opinion, and it is not further considered.

consideration of the evidence, the ALJ assessed Plaintiff with the capacity to perform light work, except that Plaintiff cannot be exposed to extreme cold or vibration on a concentrated basis, and cannot climb, balance, stoop, and crouch more than occasionally. (R. 16).  The ALJ found that Plaintiff is unable to perform his past relevant work, but that a significant number of jobs exist in the national economy that Plaintiff is able to perform. (R. 23-24).  Consequently, he determined that Plaintiff is not disabled within the meaning of the Act, and denied his applications.  (R. 24).

Plaintiff requested, but was denied review of the ALJ's decision (R. 8), so that decision is the final decision of the Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and

3

whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

    An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity

that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).

In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show jobs existing in the economy which are within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims error both in the ALJ's RFC assessment and in his credibility finding.  With regard to the ALJ's RFC assessment, Plaintiff claims two errors:  First he argues that the ALJ erred in according "significant weight" to the opinion of Dr. Tawadros, because the opinions of state agency consultants do not constitute substantial evidence.  Then, he argues that the ALJ improperly chose only the portions of nurse-practitioner Morrison's report which were favorable to his decision, while ignoring the portions which were to the contrary.  Plaintiff also claims the ALJ made three errors in his credibility finding.  He argues (1) that in discounting Plaintiff's credibility the ALJ substituted his lay opinion for the medical opinions of Plaintiff's treating sources when he relied upon Plaintiff's failure to take certain medical treatments; (2) that the ALJ improperly weighed Plaintiff's limited daily activities in his credibility determination; and (3) that the ALJ improperly used Plaintiff's work history to discount his credibility.  The Commissioner argues that the ALJ's credibility determination is supported by substantial evidence–that the ALJ properly articulated the evidence upon which he relied in his credibility determination, and that substantial record evidence supports his view of the

evidence.  He also argues that the ALJ properly evaluated both the "other" medical source

opinion of nurse-practitioner Morrison and the medical opinion of the nonexamining state

agency consultant, Dr. Tawadros; and that substantial evidence supports the weight

accorded each opinion.  The court generally agrees with the Commissioner's arguments.

Because both a proper credibility determination and proper evaluation of the medical

source opinions are necessary to a proper RFC assessment; SSR 96-8p West's Soc. Sec.

Reporting Serv., Rulings 143-51 (Supp. 2011); the court will begin, as did the

Commissioner, with consideration of Plaintiff's arguments regarding the ALJ's credibility

determination.

## III.   The Credibility Determination

An ALJ's credibility determinations are generally treated as binding on review.

Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d

407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the

finder of fact" and will not be overturned when supported by substantial evidence.

Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the

ALJ's credibility determinations, the court will usually defer to the ALJ on matters

involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but

see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule").  "However,

'[f]indings as to credibility should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings.'" <u>Wilson</u>, 602 F.3d at 1144

(quoting <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988)).

### A.    Failure to Seek Additional Medical Treatment

Plaintiff's first credibility argument is that "the ALJ criticized [Plaintiff] for not

seeking additional medical treatment," and that this constitutes error because the ALJ

relied upon a failure to seek particular medical treatment that had not been recommended

by any medical source, and because the ALJ may not substitute his lay opinion over the

opinion of the treating sources who chose not to recommend the treatment.  (Pl. Br. 8-9)

(citing <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1221 (10th Cir. 2004)).  The Commissioner

asserts that Plaintiff's "argument misapprehends the ALJ's finding," and that the essence

of the finding was that only minimal and conservative treatment was provided for

Plaintiff, suggesting that Plaintiff's symptoms were not as severe as he now alleges.

(Comm'r Br. 10-11).  The court agrees.

The error alleged here is contained within a section of the decision titled, "<u>The</u>

<u>objective and other medical evidence including the course of treatment and the location,</u>

<u>duration, frequency, and intensity of the claimant's symptoms are fully consistent with the</u>

<u>above residual functional capacity but are inconsistent with the allegations of disability</u>."

(R. 18-21) (underline in original).  In that section, the ALJ summarized the course of

Plaintiff's treatment, noted the treatment which was pursued, and contrasted that

treatment with other possible treatment that had not been prescribed or recommended.

Although Plaintiff quoted a portion of the decision in which the ALJ pointed to treatment which was not prescribed or recommended, he failed to quote the very next sentence in which the ALJ noted another treatment--that Plaintiff alleges use of a back brace, but that there is no record evidence that a back brace was ever prescribed.  (R. 18).  As the Commissioner suggests, the credibility analysis in this regard relies on a finding that Plaintiff underwent conservative treatment and was alleging use of treatment which was not prescribed, but was not seeking additional treatment or greater relief from his symptom--as one would expect if the symptoms were as severe as Plaintiff alleges. Moreover, Plaintiff's brief suggests that he understood the ALJ to be relying on Plaintiff's failure to seek additional, or more aggressive treatment.  Plaintiff characterized the decision as criticizing Plaintiff for "not seeking additional medical treatment."  (Pl. Br. 8) (emphasis added).  The ALJ relied on this failure in finding Plaintiff's allegations not credible, and it is not error to do so.

Finally, Plaintiff's reliance on the Hamlin case is inapposite here because unlike Hamlin, the ALJ here did not substitute his opinion for that of any treating source. Rather, he merely suggested that if Plaintiff's symptoms were as severe as he now alleges, he would have sought additional, or more aggressive, treatment.  As the Commissioner suggests, SSR 96-7p, dealing with assessing credibility, instructs that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints."  West's Soc. Sec. Reporting Serv., Rulings 140 (Supp. 2011).  In

this case, the ALJ did not err in finding that Plaintiff's treatment was conservative, and that Plaintiff did not seek additional or more aggressive treatment, and in using those findings to discount the credibility of Plaintiff's allegations.

### B.      Reliance Upon Limited Daily Activities

Plaintiff argues that the ALJ erred in two ways by relying upon Plaintiff's daily activities to support a finding of incredibility.  First, he argues that his daily activities are limited by his impairments, and that the ALJ unfairly represented his allegations without acknowledging his limitations.  The Commissioner acknowledges that Plaintiff's daily activities alone do not provide a sufficient basis to find Plaintiff's allegations incredible, but argues that the ALJ was entitled to consider Plaintiff's daily activities as a part of his credibility analysis.

As he did when considering course of treatment, the ALJ considered Plaintiff's daily activities in a separate section of the decision titled, "The claimant's daily activities are consistent with the above residual functional capacity assessment but are inconsistent with the disability allegations."  (R. 21) (underline in original).  In this section, the ALJ summarized Plaintiff's daily activities, noting that Plaintiff lived alone, provided personal care with some problems with dressing, prepared multiple meals daily, performed household chores with assistance, was able to travel independently, shopped at least twice weekly up to thirty minutes at a time, handled his own finances, read and watched TV, and socialized with others.  Id. (citing Exs. C4E, C11E (R. 196-207, 236-47)).  Plaintiff

claims this is error because the ALJ did not repeat each of the limitations on activities stated by Plaintiff such as:  difficulty getting in and out of the bathtub; not bathing or shaving often due to pain; taking two or three days to mow the lawn, often with help from his brother and nephews; watching TV while lying on his back; and doing certain chores only when he was "strong enough."  (Pl. Br. 10).  The court's review of the ALJ's summary and of the records cited reveals that the decision contains a fair summary of Plaintiff's allegations.  Plaintiff cites no authority for the proposition that the ALJ must accept or repeat the claimant's characterization of his limitations.  It would be incongruous to require the ALJ to accept the claimant's characterization of his limitations or of his daily activities while at the same time purporting to have the ALJ evaluate the credibility of those very allegations.  Exercising the deference necessary when reviewing an ALJ's credibility determination, the court finds that the ALJ did not take Plaintiff's statements out of context or otherwise unfairly represent those statements.

Next, Plaintiff points out that activities such as personal care, household tasks, hobbies, and club or social activities are generally not considered substantial gainful activity and that the sporadic performance of such household tasks or work does not show ability to perform substantial gainful activity.  (Pl. Br. 11) (citing 20 C.F.R. § 404.1572(c); Thompson, 987 F.2d at 1489; Broadbent, 698 F.2d at 413; and Emerson v. Astrue, 2011 U.S. DIST LEXIS 37490, *20-22 (D. Kan. Apr. 6, 2011).  He argues that the limited daily activities at issue here do not constitute substantial evidence supporting

11

the ALJ's credibility determination.  Id.  Plaintiff is correct in his first two assertions--that the activities described are generally not considered substantial gainful activity, and that the sporadic performance of household tasks or work does not show the ability to perform substantial gainful activity.  20 C.F.R. 404.1572(c); Thompson, 987 F.2d at 1489).  However, it does not necessarily follow that the activities at issue here are not substantial evidence supporting the ALJ's credibility determination.

As Plaintiff states in his brief, "Numerous cases show that while an ALJ may consider a claimant's daily activities, the activities do not establish–without more evidence–that a person is able to work full time."  (Pl. Br. 11) (emphasis added).  The court in Broadbent, noted that such activities do not establish that a person is able to engage in substantial gainful activity, but that they may be considered, along with medical evidence, in determining whether a party is entitled to disability benefits.  698 F.2d at 413.  That is precisely what the court did in Broadbent, it considered Plaintiff's daily activities along with the medical evidence, but in the end it determined the significance of the activities at issue was undermined by "a fatal deficiency in the medical testimony supporting the [Commissioner.]" Id.  In Broadbent, the error the court found was that there was insufficient evidence beyond the limited daily activities to justify a finding that the claimant was able to work full-time.

Emerson does not require a different result.  In that case, the court first addressed Plaintiff's arguments that the RFC assessment was not supported by substantial evidence

12

and did not comply with the narrative discussion requirement of SSR 96-8p.  Emerson,

2011 U.S. DIST LEXIS 37490, at *6-19.  In concluding that analysis, the court

determined that remand was necessary because the ALJ, in fact failed to provide a proper

narrative discussion, and "also erroneously found a portion of Plaintiff's testimony not

credible when in fact it was consistent with medical treatment records."  Id. at *18.

Thereafter, the court noted that it had already partly addressed the credibility issue, and

that a new credibility determination would be necessary on remand.  Id. at *19.

Nevertheless, the court went on to consider the ALJ's evaluation of daily activities in his

credibility determination.  Id. at *19-24.  Following the Eighth Circuit case of Draper v.

Barnhart, 425 F.3d 1127 (8th Cir. 2005), the court determined that the claimant's daily

activities did not establish an ability to work full time and were not inconsistent with

claims of disabling pain.  Id. 2011 U.S. DIST LEXIS 37490, at *24.  In Emerson, as in

Broadbent, the court found that the claimant's limited daily activities--considered in

conjunction with the medical evidence--provided insufficient evidence that Plaintiff was

able to work full time.

    Here, the situation is different.  The ALJ found that Plaintiff's daily activities are

consistent with the RFC assessed, and considered those daily activities in conjunction

with a six-page analysis of the medical evidence, the course of treatment, the medical

source opinions, and Plaintiff's work history, to determine that Plaintiff's allegations are

not credible, and that Plaintiff is able to perform a limited range of light work.  (R. 18-

13

23).  The court finds that the ALJ's use of Plaintiff's daily activities constitutes

substantial evidence supporting the finding that Plaintiff's allegations are not credible,

and when considered in conjunction with the medical evidence provides sufficient

evidence that Plaintiff is able to perform a limited range of light work.

### C.   Work History

In his final credibility argument, Plaintiff claims the ALJ improperly used

Plaintiff's work history because he focused only on the five years preceding Plaintiff's

applications and ignored the ten prior years, and because the lack of work from 2004

through 2006 is consistent with Plaintiff's claim of disability beginning in 2002.  (Pl. Br.

12).  The Commissioner argues that the ALJ specifically considered the fifteen year

period from 1993 through Plaintiff's alleged onset date of 2008, and that even if the ALJ

had not considered work history there would have been no error because an ALJ is not

required to consider every possible credibility factor.  (Comm'r Br. 12).

As the Commissioner suggests, the ALJ explicitly considered Plaintiff's work

history for fifteen years beginning January 1, 1993.  (R. 22).  He noted that Plaintiff's

work history might otherwise be construed to support Plaintiff's credibility, but that

Plaintiff's earnings met the level of significant gainful activity only eight years out of the

fifteen years under consideration.  Id.  The ALJ also noted that in the five years

immediately before Plaintiff's alleged date of onset, Plaintiff was generally employed less

14

than full time, and had no earnings in 2004, 2005, and 2006.  Id.  Record evidence

supports the ALJ's findings.  (R. 165-67) (Ex. C4D).

Plaintiff's argument--that his lack of work in 2004 through 2006 supports his

claim of disability beginning in 2002--ignores two important facts.  First, Plaintiff's work

in 2007 and 2008--after the three years of not working--suggests he was able to work

during those three years.  Second, Plaintiff no longer alleges his disability began in 2002.

At the hearing he amended his onset date to March 21, 2008, the day after the period of

work in 2007 and 2008 ended.  (R. 29).  As the Commissioner argues, the ALJ did not

focus on the five years immediately preceding onset to the exclusion of the prior ten

years, but specifically considered Plaintiff's work history for the relevant period--the most

recent fifteen years preceding the alleged onset of disability.  Plaintiff has shown no error

in the ALJ's consideration of his work history.

The court has considered each of Plaintiff's allegations of error in the ALJ's

credibility determination, and has also considered the ALJ's credibility evaluation as a

whole, and finds no error.  The ALJ provided six pages of analysis regarding the

credibility of Plaintiff's allegations of symptoms, including consideration of the objective

medical evidence, the course of treatment, Plaintiff's daily activities, and Plaintiff's work

history.  At the end of his analysis, the ALJ explained his credibility finding:

> Consequently, based upon objective medical evidence, daily activities, and
> work history, I have found the claimant less than fully credible in respect to
> his alleged limitations but have given him the benefit of doubt in regard to
> physical and mental symptoms including headaches, back and leg pain that

have restricted him to less than a full range of light work with appropriate limitations on work requiring him to climb, balance, stoop, and crouch more than occasionally; and/or exposing him on a concentrated basis to extreme cold and vibration.

(R. 22).

Plaintiff asserts no error in the ALJ's finding that Plaintiff's allegations are not supported by the objective medical evidence. Giving the ALJ's credibility finding the deference it is due as the particular province of the fact-finder, the court finds no error as alleged by Plaintiff in the credibility finding.

## IV.    Weighing Medical Source Opinions

Plaintiff claims the ALJ erred in making his RFC assessment when he accepted Dr. Tawadros's medical opinion as substantial evidence, and when he chose to accept portions of nurse-practitioner Morrison's opinion which were favorable to his decision while ignoring the portions which were to the contrary.[3] The Commissioner argues that

---

[3]Plaintiff also implies that the ALJ erroneously found that the opinion of the state agency single decision-maker (SDM), Gerald J. Madden, was substantial evidence supporting the ALJ's decision. (Pl. Br. 6) (citing Thongleuth v. Astrue, 2011 U.S. Dist. LEXIS 35773, *31 (D. Kan. Apr. 4, 2011)). The Commissioner argues that Mr. Madden's assessment was neither mentioned nor relied upon by the ALJ. (Comm'r Br. 16-17). Plaintiff is correct to note that a single decision-maker is not a medical professional, his opinion is not a medical source opinion, and as such, his opinion is entitled to no weight. Thongleuth, at *31. However, Plaintiff has not shown that the ALJ accorded SDM Madden's RFC assessment any weight, and the court finds that he did not.

The decision contains no mention of Mr. Madden, or of the RFC assessment completed by him--Ex. C7F (R. 412-19). The ALJ noted that he had considered the "State agency medical opinions," and specifically named Drs. Warrender and Tawadros as the medical sources who had provided those opinions. (R. 22). As Plaintiff points out Mr. Madden's RFC assessment is, by definition, not a medical opinion. Moreover, there

16

the ALJ properly weighed the "other" medical source opinion of nurse-practitioner

Morrison and the medical opinion of Dr. Tawadros, and that substantial evidence supports

his evaluation.

### A.     Standard for Weighing Medical Source Opinions

"Medical opinions are statements from physicians and psychologists or other

acceptable medical sources that reflect judgments about the nature and severity of [a

claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and,

unless a treating source opinion is given controlling weight, all medical opinions will be

evaluated by the Commissioner in accordance with factors contained in the regulations.

Id. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings

123-24 (Supp. 2011).  Those factors are:  (1) length of treatment relationship and

frequency of examination; (2) the nature and extent of the treatment relationship,

including the treatment provided and the kind of examination or testing performed;

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole; (5) whether or not the

physician is a specialist in the area upon which an opinion is rendered; and (6) other

factors brought to the ALJ's attention which tend to support or contradict the opinion.  20

---

is simply no indication that the ALJ relied upon it or gave it any weight.  The court finds
no error such as that implied by Plaintiff.

C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1301

(10th Cir. 2003); <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001).

Recognizing the reality that an increasing number of claimants have their medical

care provided by health care providers who are not "acceptable medical sources"--nurse

practitioners, physician's assistants, social workers, and therapists--the Commissioner

promulgated SSR 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp.

2011).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on
> containing medical costs, medical sources who are not "acceptable medical
> sources," such as nurse practitioners, physician assistants, and licensed
> clinical social workers, have increasingly assumed a greater percentage of
> the treatment and evaluation functions previously handled primarily by
> physicians and psychologists.  Opinions from these medical sources, who
> are not technically deemed "acceptable medical sources" under our rules,
> are important and should be evaluated on key issues such as impairment
> severity and functional effects, along with the other relevant evidence in the
> file.

<u>Id.</u>, Rulings, 330-31.

SSR 06-3p explains that such opinions will be evaluated using the same regulatory

factors used in evaluating medical opinions; <u>id.</u> at 331-32(citing 20 C.F.R. §§ 404.1527,

416.927); and explains that the ALJ "generally should explain the weight given to

opinions from these 'other sources,' or otherwise ensure that the discussion of the

evidence in the . . . decision allows a claimant or subsequent reviewer to follow the

adjudicator's reasoning, when such opinions may have an effect on the outcome of the

18

case." Id. at 333; see also Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007)

(remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

## B.   The ALJ's Evaluation

The ALJ discussed the treatment given by, and the opinion of, nurse-practitioner

Morrison at several points throughout his decision, and explained the weight accorded to

her opinion:

> Recently, the clamant has been under the care of Jennifer Morrison, a
> family nurse practitioner, at the Good Samaritan Clinic for chronic back
> pain and high blood pressure.  As a result of an examination conducted on
> February 12, 2009, the severity of the claimant's symptoms are only
> partially supported based on medications prescribed [Naproxen,
> Cyclobenzaprine, Diovan, and Lipitor], although the physical examination
> resulted in negative signs on straight leg raising and Patrick Maneuver
> protocols to detect degenerative disc disease and hip disease; indicated no
> tenderness in paraspinous muscles upon palpation; and suggested that the
> claimant would have normal gait with good posture and would be able to
> change positions normally (Exhibit C11F/1-2) [(R. 438-39)].

(R. 18)

> While there is a three to four year history of symptoms associated with high
> blood pressure while the claimant has been under the care of Nurse
> Morrison and Dr. Kabir, (Exhibits C1F, C2F, and C11F) [(R. 282-301, 438-
> 71)], the severity of his symptoms is not supported by results of the physical
> examination conducted by Nurse Morrison on February 20, 2009, that
> showed the claimant's blood pressure was improving since he began taking
> Lipitor earlier in the month (Exhibit C11F/3 and 6) [(R. 440, 443)].

(R. 19).

> While it appears that the claimant's allegations that he is unable to perform
> fulltime work due to physical restrictions are supported by the opinions of
> Nurse Morrison, her assessment of February 12, 2009, is generally
> consistent with the above residual functional capacity at less than a full

19

range of light work with appropriate postural and environmental limitations. In making her assessment Nurse Morrison concluded that the claimant would be able to perform work if it [did] not require him to lift more than 25 pounds; sit for more than one hour without taking a break; walk more than one hour without taking a break; and bend on more than a limited basis.  Nurse Morrison also concluded that the claimant would need to change positions frequently (Exhibit C11F/1-3) [(R. 438-40)].

However, I have been unable to accord controlling weight to opinions of Nurse Morrison under 20 CFR 404.1527, 20 CFR 416.927, and SSRs 96-2p, 96-5p, 96-6p and 06-3p, since she is not an acceptable treating source. However, in considering opinion evidence, I also considered her opinions in accordance with Social Security Ruling 06-03p to show the severity of the individual's impairment(s) and how they may affect his ability to function. While finding Nurse Morrison to be a health care provider who is not an acceptable medical source, I also found her assessment of the claimant to be consistent with other evidence that depicts activities, limitations, and restrictions showing the claimant to have greater capacity than expressed in his testimony and function reports of August 11 and October 31, 2008 (Exhibits C4E and C11E) [(R. 196-207, 236-47)].  Therefore, the statements of Nurse Morrison are given probative but not substantial weight since they are generally consistent with the evidence of record and suggest that the claimant's impairments do not prevent performance of work.

(R. 20).

After explaining the weight accorded to nurse-practitioner Morrison's opinion, the ALJ noted that "[n]o other treating sources or staffs of treating sources have offered opinions on the claimant's capacity to perform work related activities."  (R. 20). Thereafter, he discussed and explained the weight accorded to the RFC opinion of the state agency consultant physician, Dr. Tawadros:

who completed a physical residual functional capacity assessment of the claimant on January 20, 2009, concluding that he could perform a range of light work or work requiring him to lift and/or carry 20 pounds occasionally or 10 pounds frequently, stand and/or walk about six hours in an 8-hour

workday, and sit about six hours in an 8-hour workday.  Dr. Tawadros also concluded that the claimant would be unable to perform work requiring him to climb, balance, stoop, and crouch more than occasionally or work exposing him on a concentrated basis to extreme cold and vibration (C10F) [(R. 430-37)].

After considering the requirements of 20 CFR 404.1527, 20 CFR 416.927, and SSRs 96-2p, 96-5p, 96-6p and 06-3p, I have given substantial weight to opinions of Doctors Warrender and Tawadros since their opinions were supported by evidence of treatment available at the time and are consistent with other medical evidence discussed herein although less than fully consistent with the testimony of the claimant.

(R. 21).

In reaching this [RFC] conclusion, I considered State agency medical opinions for less than full range of light work based on the opinions of Doctors Warrender and Tawadros which were discussed previously. Although these reviewing sources did not examine the claimant, they provided specific reasons for their opinions about the claimant's residual functional capacity showing that they were grounded in the evidence in the case record, including careful consideration of the claimant's allegations about his symptoms and limitations.  Because these opinions were reasonable, based on the evidence, and consistent with the record as a whole, I have given them significant weight (20 CFR 404.1527(d), 20 CFR 416.927(d), and Social Security Rulings 96-2p, 96-6p, 96-8p).  In making this determination, I considered evidence received into the record after the state assessment, including the testimony of the claimant and additional medical evidence, and concluded that it did not provide new or material information sufficient to alter findings about the claimant's residual functional capacity.

(R. 22).

## C.    Analysis

Plaintiff cites the case of <u>Frey v. Bowen</u>, 816 F.2d 508, 515 (10th Cir. 1987) for

the proposition that "check-the-box" RFC assessment forms such as that completed by

21

Dr. Tawadros, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.  (Pl. Br. 5).  He argues that Dr. Tawadros merely summarized the record evidence and did not provide a thorough report, so that her assessment cannot be considered substantial evidence.  The court does not agree.

Plaintiff's argument misses the meaning of "substantial evidence" which was explained supra at 4:  "Substantial evidence is more than a scintilla, but is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988)."  This very definition was approved by the Supreme Court in Richardson v. Perales, 402 U.S. 389, 401 (1971).  Dr. Tawadros's RFC assessment as a medical professional constitutes just such substantial evidence, especially since there is no other medical opinion in the record which directly conflicts with her opinion.

Moreover, although the Frey court indeed made the broad assertion that "Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence;" Frey, 816 F.2d at 515; a closer look at the Frey opinion reveals significant differences from this case.  In Frey, four physicians provided opinions regarding plaintiff's medical condition:  Dr. Warden, a board-certified family practitioner who was plaintiff's treating physician; Dr. Johns, a chiropractor, who treated plaintiff for over fourteen years; Dr. Christiansen, who performed a consultative examination for the Social Security Administration; and Dr. Gabbert, who performed a

second consultative examination for the agency.  Frey, 816 F.2d at 513-14.  Dr. Warden testified at length in two administrative hearings based upon his examinations and upon reports of other treating physicians that plaintiff could not make mechanical use of his right hand and could not sit longer than fifteen minutes, and that plaintiff could not take anti-inflammatory or anti-arthritic medications.  Id., 816 F.2d at 514.  He concluded "that Frey's condition was progressive and degenerative, and that Frey was totally disabled." Id.  Dr. Johns produced a report indicating that plaintiff had progressive degenerative changes and spurring in his spine that would produce increased pain and that plaintiff could not take anti-inflammatory and painkilling drugs.  Id.  Dr. Christiansen reported that plaintiff had significant disease in his right knee, that he "did not find 'much in the way of objective findings' reflecting Frey's back pain, but concluded that '[o]bjective findings in low back pain are difficult to obtain in view of legitimate impairment.'" Id. (quoting the administrative record).  Dr. Gabbert found plaintiff's back range of motion limited by about twenty-five percent, and "reported his 'impression that patient is over-reacting considerably to the straight leg raising' and felt that 'the amount of discomfort [Frey] was having with straight leg raising has been exaggerated considerably.'" Id. (quoting the administrative record).  In proceedings before the Commissioner, the ALJ rejected Dr. Warden's testimony and Dr. Johns's reports in favor of Dr. Gabbert's report, stating that Dr. Gabbert had no interest in the outcome whereas "[t]he family doctor naturally advocates his patient's cause."  Frey, 816 F.2d at 513.

23

The Court of Appeals found it was error to credit Dr. Gabbert's report over that of Drs. Warden and Johns because (1) there was no indication of careful study of Frey's history or prior examinations in Dr. Gabbert's report, (2) the report even misstated Frey's name, (3) the report was contradicted by much more thorough reports, examinations, treatment, and explanations provided by treating doctors, Dr. Johns, and Dr. Warden, and (4) Dr. Gabbert's report was merely a check-the-box form. Frey, 816 F.2d at 515. The Frey opinion makes abundantly clear that Dr. Gabbert's report was found insufficient because it was inferior in quality and content to the testimony, treatment, and reports provided by Drs. Warden and Johns, and as such, was not substantial evidence upon which the ALJ might properly rely.

This case is much different than Frey. Here, Dr. Tawadros provided an opinion regarding Plaintiff's physical capabilities after reviewing all of the medical evidence in the record on January 20, 2009. (R. 430-37). Nurse-practitioner Morrison provided an opinion regarding Plaintiff's physical capabilities after an examination on the very first day she treated and examined Plaintiff--February 10, 2009. (R. 438-39, 443). There is no other medical source opinion in the record regarding Plaintiff's physical capabilities. Dr. Tawadros is a medical doctor, an "acceptable medical source," while nurse-practitioner Morrison is not. Although Dr. Tawadros never treated or examined Plaintiff, she reviewed all of the medical evidence then in the file, summarized the evidence, and formulated her opinion on the basis of that evidence. Nurse-practitioner Morrison

examined Plaintiff and, according to the record evidence, treated Plaintiff twice in one month, but she formulated her opinion after only one examination and on the very first visit, and there is no indication she considered any other medical records or other reports beyond Plaintiff's report of his medical history, his report of his physical capabilities, and her own examination of Plaintiff.  In these circumstances, there can be no doubt that Dr. Tawadros's medical opinion constitutes substantial evidence which must be subjected to comparative weighing along with nurse-practitioner Morrison's opinion in accordance with the regulatory factors.

Plaintiff argues that Dr. Tawadros's opinion conflicts with evidence suggesting that Plaintiff had difficulty with heel and toe walking, squatting, and arising from sitting. (R. 6) (citing (R. 408)).  The problem with this argument is that the record cited by Plaintiff (the consultative examination report dated September 13, 2008) was reviewed by Dr. Tawadros in making her opinion, and was specifically mentioned in her report.  (R. 437) ("CMC exam on 09-13-2008," "C[laimant] had mild problems getting on and off exam table, heel/toe walking, squatting and rising from a sitting position, mild difficulty hopping.").  Therefore, Plaintiff's (or his counsel's) lay opinion that these difficulties conflict with Dr. Tawadros's opinion, appears to be in conflict with Dr. Tawadros's medical opinion that, "Based on the information available, C[laimant] is capable of completing this RFC."  (R. 437).  Neither Plaintiff nor counsel is qualified to contradict Dr. Tawadros's opinion on the basis of such a medical argument without citation to

25

medical authority, which he has not done.  The fact that Plaintiff or his counsel believe there is a conflict is insufficient to overcome the physician's opinion based in part on the allegedly conflicting evidence.  Plaintiff's further assertion that state agency consultants' opinions must find adequate support in the medical evidence is a correct statement of the law, but both Dr. Tawadros and the ALJ pointed to medical evidence supporting Dr. Tawadros's medical opinion, and Plaintiff does show specific error either in the statements of Dr. Tawadros or in the findings of the ALJ.  Dr. Tawadros's opinion is substantial evidence upon which the ALJ might properly rely.

In his final claim of error, Plaintiff argues that the ALJ applied an improper "pick and choose" method of evaluating nurse-practitioner Morrison's opinion, using the portions of the opinion which were favorable to his decision, but failing to explain why he rejected her opinion that Plaintiff must have a sit/stand option.  (Pl. Br. 6-8).  Dr. Tawadros opined that Plaintiff could lift and/or carry 20 pounds occasionally or 10 pounds frequently, could stand and/or walk about six hours in an 8-hour workday, and could sit about six hours in an 8-hour workday.  (R. 431).  She also concluded that Plaintiff cannot climb, balance, stoop, and crouch more than occasionally, and that he must avoid concentrated exposure to extreme cold and vibration.  (R. 434).  Nurse-practitioner Morrison concluded Plaintiff is able to lift up to 25 pounds, and to sit or to stand up to one hour each without a break, must limit bending, must have a break every

26

two hours, and must change positions frequently.  (R. 439).  The RFC ultimately assessed

by the ALJ is identical to that of Dr. Tawadros.  (R.16).

A careful comparison of these opinions reveals that there is only one irreconcilable

conflict between them.  That conflict is that Dr. Tawadros has limited Plaintiff to lifting

and/or carrying 20 pounds whereas nurse-practitioner Morrison opined that Plaintiff could

lift as much as 25 pounds.  Since Dr. Tawadros's limitation is more restrictive and is

therefore more favorable to Plaintiff, the court finds no error prejudicial to Plaintiff in the

ALJ's decision to assess that limitation.  Plaintiff, however, equates nurse-practitioner

Morrison's finding of a need to change positions frequently with a need to alternate

sitting and standing frequently, and argues that the ALJ must explain why he rejected

Nurse-practitioner Morrison's allegedly more-restrictive opinion.  The court disagrees.

Nurse-practitioner Morrison specifically opined that Plaintiff can sit for one hour

without break, and can walk one hour without break.  She also opined that breaks were

needed only every two hours.  Alternating walking and sitting every hour can by no

stretch of the imagination be considered "frequent" position change.  Yet, Nurse-

practitioner Morrison's statement that Plaintiff needs frequent position changes must be

reconciled with her statements--in the immediately following sentence of her report--that

Plaintiff can sit or can walk for one hour without a break.  Moreover, nurse-practitioner

Morrison did not specify what she viewed as a position change, or how frequently a

"frequent position change" would occur.  In order to reconcile nurse-practitioner

Morrison's statements, the court concludes that the frequent position changes to which nurse-practitioner Morrison refers involve frequently moving about at one's work station, and adjusting one's posture, or position while remaining seated, standing, or walking, and does not require frequent alternation between sitting, standing, or walking.  Thus, the allegedly conflicting opinions of Dr. Tawadros and nurse-practitioner Morrison are easily and naturally reconcilable.  Plaintiff has not shown any conflict between the opinions which might trigger a duty of the ALJ to address or explain the alleged conflict.

As quoted above, the ALJ considered and weighed both nurse-practitioner Morrison's "other" medical source opinion and Dr. Tawadros's "medical opinion" in accordance with the correct legal standard, and explained the weight accorded to each. The ALJ's finding is supported by substantial evidence in the record, and Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 12th  day of December 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum_____
**John W. Lungstrum**
**United States District Judge**

28